IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EXERGEN CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>WAL-MART STORES INC., S.A.A.T. SYSTEMS APPLICATION OF ADVANCED TECHNOLOGY LTD., DAIWA PRODUCTS, INC. and HANA MICROELECTRONICS CO., LTD.,<br><br>　　　　　　Defendants.<br><br>AND RELATED ACTIONS. | Civil Action No. 01-CV-11306-RCL<br>(consolidated with Civil Action No. 02-CV-10436-RCL) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR NEW TRIAL, MOTION FOR RELIEF FROM JUDGMENT, AND MOTION TO ALTER OR AMEND JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## **TABLE OF CONTENTS**

**Page #s**

I. EXERGEN'S OPPOSITION CONFIRMS THAT DEFENDANTS' MOTION FOR NEW TRIAL SHOULD BE GRANTED ..................................................................1

    A. Prejudicial Conduct by Exergen's Counsel ...........................................................1

        1. Exergen's "Waiver" Argument is Unsupported .........................................2

        2. Exergen's "Permissible Inference" Argument is Without Merit ..............................................................................................................3

            a. The Israeli Patent Application ......................................................3

            b. SAAT's "Communication" with Patent Counsel .........................4

            c. Exergen's Statement Regarding CVS Was False .........................5

        3. Exergen's Conceded False Statements .......................................................5

    B. Legal Errors ..........................................................................................................7

        1. Improper Admission of the Indemnification Agreement and Insurance Policy ..........................................................................................7

        2. Improper Admission of the Safety 1st Product and Packaging ..................7

        3. Improper Admission of Mr. Faris' Testimony ...........................................8

        4. Unopposed Legal Errors .............................................................................8

    C. The Verdict Is Against The Weight Of The Evidence ..........................................9

    D. The Jury's Verdict is Excessive .............................................................................9

    E. Improper Conduct Affected The Jury ..................................................................11

II. EXERGEN'S OPPOSITION CONFIRMS THAT DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT SHOULD BE GRANTED ...............................11

III. EXERGEN'S OPPOSITION CONFIRMS THAT DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT SHOULD BE GRANTED .....................................11

# TABLE OF AUTHORITIES

**Page #s**

*American Universal Insurance Co. v. Falzone*,
 644 F.2d 65 (1st Cir. 1981).................................................................................................3

*Computer Systems Engineering, Inc. v. Qantel Corp.*,
 740 F.2d 59 (1st Cir. 1984).................................................................................................3

*Joy Tech. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) ..............................................................................................10

*Manville Sales Corp. v. Paramount Sys., Inc.*,
 917 F.2d 544 (Fed. Cir. 1990) ..........................................................................................10

*Polansky v. CNA Insurance Co.*,
 852 F.2d 626 (1st Cir. 1988)...............................................................................................1

*Smith v. Kmart Corp.*,
 177 F.3d 19 (1st Cir. 1999).................................................................................................3

Defendants S.A.A.T. Systems Application of Advanced Technology, Inc. ("SAAT"), Daiwa Products, Inc. ("Daiwa"), and CVS Corp. ("CVS") (collectively "Defendants") submit this Reply Brief in response to Plaintiff Exergen Corp.'s ("Exergen's" or "Plaintiff's") Opposition ("Opposition") to Defendants' Motion for New Trial, Motion for Relief from Judgment, and Motion to Alter or Amend Judgment (collectively "Motions"). As set forth in detail below, Exergen's Opposition confirms that Defendants' Motions should be granted.

## I. EXERGEN'S OPPOSITION CONFIRMS THAT DEFENDANTS' MOTION FOR NEW TRIAL SHOULD BE GRANTED

In support of its Motion for New Trial, Defendants provided several bases under which the Court should grant a new trial, namely: (1) the prejudicial conduct by Exergen's counsel, (2) legal errors, (3) the verdict is against the weight of the evidence, (4) the jury's verdict is excessive, and (5) improper conduct affected the jury.

### A. Prejudicial Conduct by Exergen's Counsel

Defendants contend that Exergen's closing statement went far beyond what is permissible during trial. In response, Exergen argued that counsel is entitled to "argue the evidence and the credibility of witnesses." (Opp'n at 3.) While counsel is permitted to provide argument during closing statement, counsel is not permitted to deceive the jury, misrepresent the evidence, or invent falsities. *See Polansky v. CNA Insurance Co.*, 852 F.2d 626, 632 (1st Cir. 1988) ("While [the lawyer] must provide 'zealous advocacy' for his client's cause, we encourage this only as a means of achieving the court's ultimate goal, which is finding the truth. Deceptions, misrepresentations, or falsities can only frustrate that goal and will not be tolerated within our judicial system.").

Here, Exergen's closing statement went beyond mere argument as set forth in Defendants' Memorandum in Support of Defendants' Motion for New Trial. (Defs.' Mem. in Support of Defs.' Mot. for New Trial ("Defs.' Mem.") at 2-14.) In its Opposition, Exergen responded to each of the misstatements pointed out by Defendants in one of three ways: (1) Exergen argued that Defendants' waived their right to object; (2) Exergen argued that the misstatements were merely "inferences"; and (3) Exergen did not even try and defend the misstatements.

1. **Exergen's "Waiver" Argument is Unsupported**

Exergen attempted to argue that Defendants waived its objections to many of Exergen's false statements and that "failure to object to the argument at trial or to move for a mistrial" bars Defendants from using these misstatements as grounds for a new trial. (Opp'n at 3.) To the contrary, Defendants objected to Exergen's closing statement in a sidebar with the Court immediately after Exergen has completed its closing. (07-07-05 Trial Tr. 155:11-168:2.)[1] In addition, Defendants also moved for a mistrial during that same sidebar. (07-07-05 Trial Tr. 166:22-167:2.). Accordingly, Exergen's arguments of waiver are simply incorrect.

Moreover, even if there was a failure to object to the improper statements and to request a mistrial (which there was not), the Court can still consider Exergen's improper statements to

---

[1] All excerpts from the trial transcript and the trial exhibits cited in this reply brief are attached to the Decl. of Amy C. Christensen in Support of Defs.' Reply Briefs ("Christensen Decl.")

determine whether a new trial is warranted to prevent a miscarriage of justice. *Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F.2d 59, 69-70 (1st Cir. 1984).[2]

Notably, as to these misstatements and falsities, Exergen only argued wavier by Defendants and did not even attempt to defend or justify these statements. (Opp'n at 4-5.) Thus, Exergen appears to have conceded that those statements were in fact false and misleading.

### 2. Exergen's "Permissible Inference" Argument is Without Merit

In its Opposition, Exergen attempted to defend several of its false statements by stating that they were proper inferences. (Opp'n at 5-6.) Exergen seem to have confused a proper inference with a blatant misstatement.

#### a. The Israeli Patent Application

During closing, Exergen claimed that SAAT's Israeli patent application (Trial Ex. 1128) showed that Defendants' thermometers obtain the peak temperature signal and pointed to Figure 5B to show that accused devices measured peak. (07-07-05 Trial Tr. 140:6-24, 141:1-142:7.) The express text of the Israeli patent application stated, however, that Fig. 5B only illustrated "the nature of temperature measurement *within the ear canal.* . . ." (Trial Ex. 1128 at 8 (emphasis added).) Thus, Exergen's statement was not an inference, but an outright falsity.

---

[2] Exergen improperly cited to *American Universal Insurance Co. v. Falzone*, 644 F.2d 65, 67 (1st Cir. 1981), in support of its argument that Defendants have waived their right to a new trial based on certain false statements. (Opp'n at 3.) The First Circuit, however, has expressly stated that "[w]hile *Falzone* has not been expressly overruled, the mode of analysis employed in this very brief consideration of the issue has clearly been abandoned in this circuit in favor of plain error review." *Smith v. Kmart Corp.*, 177 F.3d 19, 26 n.1 (1st Cir. 1999).

### b. SAAT's "Communication" with Patent Counsel

Exergen then attempted to defend its contrived statements regarding SAAT's communications with its patent counsel. (Opp'n at 6.) While the Court allowed Exergen to argue the absence of an opinion of counsel to the jury (to which Defendants' respectfully objected), the Court did not grant Exergen a license to concoct a false story about SAAT that was completely unsupported by the record. Apart from stating that its falsities were "inferences," Exergen provided no evidence in the record from which these "inferences" could be based. The following is a list of completely unsupported falsities about SAAT and its patent counsel that Exergen presented to the jury.

- Exergen advised the jury that the Defendants could not reasonably rely upon Mr. Jensen's legal analysis because Mr. Jensen's letter states, "We haven't read the specifications. We haven't read the claims." (07-07-05 Trial Tr. 143:22-23.)
- Exergen referred the jury to "those discussions that happened that aren't written down." (07-07-05 Trial Tr. 145:16-17.)
- Exergen informed the jury that "those discussions that were happening in 2001 were not discussions that said you are all clear on the '205 patent." (*Id.* at 145:18-20.)
- According to Exergen, Mr. Jensen told his client, "whatever you do, don't ask me about '205 because I'm stuck." (*Id.* at 145:20-21.)
- According to Exergen, SAAT knew it was infringing the '205 patent, "and they couldn't figure out how they were going to get an attorney to tell them otherwise," (*id.* at 144:23-24), so SAAT and Mr. Jensen agreed to deliberately omit the '205 patent from Mr. Jensen's letter, (*id.* at 144:14-146:10).

Exergen was unable to point to any evidence that SAAT even knew about the '205 patent at the time of the letters. Accordingly, Exergen's fabrications regarding SAAT's communication with its patent counsel were improper.

### c. Exergen's Statement Regarding CVS Was False

Next, Exergen tried to defend its fabrication about CVS by characterizing it as an "inference." (Opp'n at 6.) During closing, Exergen told the jury: "They were just trying to get some competitive information from them and find out, is Exergen still in such financial trouble that they couldn't possibly start litigation against us so we can run for luck on this one." (07-07-05 Trial Tr. 148:5-9.) Exergen pointed to nothing in the record to support that CVS even asked about competitive information or information about Exergen's financial state. Again, Exergen's statement was not an inference, but another baseless falsehood.

### 3. Exergen's Conceded False Statements

In its Opposition, Exergen chose not to contest several of Defendants' contentions that certain of Exergen's statements during closing were false and improper. The contentions that Exergen has conceded are as follows:

- Exergen invented testimony from Safety 1st, claiming that Mr. Macari knew nothing about how the accused product worked (07-07-05 Trial Tr. 118:8-9), and that "Safety 1st didn't get an opinion that it thought was sufficient to go forward with the product" (07-07-05 Trial Tr. 123:4-6).

- Exergen made a false statement that the Safety 1st product was being manufactured. (07-07-05 Trial Tr. 123:12.)

- Exergen repeatedly, and improperly, urged of the jury to ignore the Court's claim construction as to the internal temperature. (*See, e.g.* 07-07-05 Trial Tr. 119:18-22, 120:11-14, 125: 24-25, 126:16-18, 127:5-9, 137:10-13, 143:23-25.)

- Exergen made a false statement that "Mr. Gerliz is the only person in the world who thinks oral temperature is not an internal temperature." (07-07-05 Trial Tr. 119:18-20.)

- Exergen made a false statement that the accused product "computes the temperature of the temporal artery." (07-07-05 Trial Tr. 125:16-17.)

- Exergen fabricated facts as to Safety 1st's review of the opinion letters claiming that "Safety 1st patent lawyer ... said not good enough and they cancelled." (07-07-05 Trial Tr. 146:12-13.)

- Exergen improperly attempted to "fill in the record" with Exergen's counsel's own overhead calculations. (07-07-05 Trial Tr. 149:3-15.)

- Exergen made a false statement that its damages expert, Mr. Faris, did not know the number of units *until he heard Mr. Nyman testify,* and so he did not have that information when he calculated overhead. (07-07-05 Trial Tr. 149:16-150:1.)

- Exergen made a false statement that, "if Daiwa had not been there, Exergen could have made the sales to Eckert, Albertson's, Wal-Mart, CVS." (07-07-05 Trial Tr. 151:6-7)

- Exergen made a false statement that CVS caused Plaintiff to lose sales of 17,000. (07-07-05 Trial Tr. 151:8-9.)

This list of Exergen's conceded false and improper statements is itself a sufficient basis for the Court to grant a new trial.

## B. Legal Errors

In its Opposition, Exergen briefly addressed a few of the legal errors alleged by Defendants.

### 1. Improper Admission of the Indemnification Agreement and Insurance Policy

In its Opposition, Exergen argued that "indemnity" was highly relevant to willfulness and inducement of infringement and that the curative instruction was satisfactory. (Opp'n at 7.) Exergen failed, however, to address the strong legal precedent of the extreme prejudice caused by the admission of insurance evidence, Exergen's repeated questioning of the witnesses regarding the indemnification agreement and insurance policy, or the circumstances, such as these, where a curative instruction cannot "unring the bell." Accordingly, Defendants' ask this Court to grant a new trial on all issues due to the prejudicial effect of the improperly admitted insurance evidence.

### 2. Improper Admission of the Safety 1st Product and Packaging

In its Opposition, Exergen argues that the Safety 1st product and packaging were properly admitted. (Opp'n at 7.) As for the Safety 1st product, it is undisputed that the Safety 1st product was not distributed to even one user anywhere in the world, by Defendants or anyone else. Accordingly, the Safety 1st product had no relevance to the issues at trial and only prejudiced the jury. As for the Safety 1st packaging, Exergen provided no evidence whatsoever that the statements in the packaging were accurate, nor does Exergen point to any evidence that the statements were admissions of Defendants.[3] Moreover, Exergen does not dispute that the

---

[3] Exergen falsely states that "S.A.A.T. wrote" the Safety 1st packaging. (Opp'n at 8.) Exergen does not cite to any evidence whatsoever to support this statement, and the evidence refutes it.

-7-

testimony of Mr. Gerlitz that Defendants had no role whatsoever in the creation of the Safety 1st packaging was unimpeached and unrebutted. Accordingly, the Safety 1st packaging had no relevance to the issues at trial and only prejudiced the jury.

Thus, the Safety 1st product and packaging should not have been admitted at trial.

### 3. Improper Admission of Mr. Faris' Testimony

In its Opposition, Exergen argues that Defendants' objection to the admission of Mr. Faris' testimony was properly overruled, but provides no rationale as to why Mr. Faris' testimony should have been admitted. (Opp'n at 7.) In addition, Exergen argues that admission of Mr. Faris' testimony was waived by Defendants' admission into evidence of Mr. Faris' expert report. Defendants did not waive their arguments that Mr. Faris failed to meet the requirements of the Federal Rules of Evidence by admitting the expert report. In fact, Defendants admitted Mr. Faris' expert report as evidence of the litany of admitted errors and unsupported assumptions in Mr. Faris' calculations. By including the report in the record, Defendants are now able to point to the many errors of Mr. Faris including, for example, his admitted "diarrhea of the mind." (06-27-05 Trial Tr. 42:25-43:17.)

For the additional reasons that Mr. Faris' improperly admitted testimony caused prejudice to Defendants, Defendants ask this Court to grant a new trial.

### 4. Unopposed Legal Errors

Exergen did not provide any opposition to Defendants' request for a new trial based on the prejudice caused by the allocation of Defendants' time to Exergen or the admission of evidence regarding the absence of a written opinion of counsel. Accordingly, because Plaintiff

does not oppose a new trial based on these legal errors, Defendants ask this Court to grant a new trial.

## C. The Verdict Is Against The Weight Of The Evidence

Exergen does not provide any additional argument in its Opposition as to why the verdict is not against the weight of the evidence, but merely cross references its Opposition to Defs.' Motions for JMOL ("JMOL Opposition"). (Opp'n at 2.) Defendants show how Exergen's Opposition actually supports Defendants' renewed motions for JMOL as set forth in Defs.' Reply Brief in Support of Defs.' Mots. for JMOL ("JMOL Reply") submitted concurrently herewith. Exergen provided no argument in this Opposition or its JMOL Opposition in response to Defendants' claim that the jury's verdict as to the validity of Claim 7 of the '813 patent and Claims 1, 2, 4, 7, 12-14, 17, 20-23, and 26-30 of the '685 patent is against the weight of the evidence.

Accordingly, Defendants ask this Court to grant a new trial because the jury's verdict is against the weight of the evidence.

## D. The Jury's Verdict is Excessive

Exergen does not attempt to provide any substantive support for the jury's verdict on damages. Exergen does not attempt to argue that there was any evidence that Defendants' activities caused Exergen to lose any sales, let alone 84,672 sales. Exergen simply observes that Defendants sold that number, ignoring the fact that, to obtain lost profits, a plaintiff must prove the number of sales it lost, not the number of sales the defendants made. Exergen also does not attempt to defend Mr. Faris' calculation of incremental profit per unit or defend the numerous admitted errors in his opinion.

The only part of the damages verdict that Exergen attempts to support is that against CVS. Exergen also does not dispute that CVS sold only 30 units in 2001. In its Opposition, Exergen argues that the verdict against CVS is somehow justified because, Exergen argues in a theory that it advances for the first time after trial, CVS induced Daiwa to import and sell 17,088 units in 2001. (Opp'n at 1.)

This argument fails on multiple levels. First, Exergen only asserted inducement as an infringement theory in connection with the '205 and '685 patents. (Jury Instructions at 30.) All of the asserted claims of the '205 and '685 patents were method claims. A method claim can only be directly infringed by someone taking the steps of the claimed method, not simply by importing or selling a device. *Joy Tech. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("A method claim is directly infringed only by one practicing the patented method."). Thus, Exergen could not prove that CVS induced Daiwa to infringe the asserted claims of the '205 and '685 patents simply by providing evidence that CVS induced Daiwa to import or sell Defendants' thermometers. Exergen would have had to provide evidence that CVS induced Daiwa to take the steps of the claimed methods. *See, e.g., Joy Tech. 6 F.3d 773-76; Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553-54 (Fed. Cir. 1990). Of course, Exergen provided no evidence of any kind at trial to support this theory. Accordingly, Exergen cannot rely on its inducement theory to justify the damages against CVS. Second, even if Exergen had provided evidence that CVS induced infringement with respect to these 17,088 units, this proof would still not support a verdict for lost profits damages. It is undisputed that CVS sold only 30 units in 2001. Every one of the remaining units sat unsold in inventory. Exergen has provided

no theory—let alone evidence—to suggest that CVS caused Exergen to lose sales by keeping thermometers in inventory.

Accordingly, Defendants request this Court grant a new trial because the jury's verdict was excessive.

### E. Improper Conduct Affected The Jury

In its Opposition, Exergen provided no response to Defendants' argument that the improper conduct at trial negatively affected the jury. Accordingly, Defendants ask this Court to grant a new trial on this basis.

## II. EXERGEN'S OPPOSITION CONFIRMS THAT DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT SHOULD BE GRANTED

For the reasons set forth above as well as those in Defendants' JMOL Reply, Defendants submit that Exergen's Opposition only confirms that Defendants Motion to Alter or Amend Judgment should be granted. Accordingly, Defendants ask this Court to grant Defendants' Motion to Alter or Amend Judgment.

## III. EXERGEN'S OPPOSITION CONFIRMS THAT DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT SHOULD BE GRANTED

For the reasons set forth above as well as those in Defendants' JMOL Reply, Defendants submit that Exergen's Opposition only confirms that Defendants Motion for Relief from

Judgment should be granted. Accordingly, Defendants ask this Court to grant Defendants' Motion for Relief from Judgment.

Respectfully submitted,

Dated: September 16, 2005    By:  /s/ Mary B. Murrane
                                  Joseph L. Kociubes (BBO #276360)
                                  Mary B. Murrane (BBO #644448)
                                  BINGHAM McCUTCHEN, LLP
                                  150 Federal Street
                                  Boston, Massachusetts 02110
                                  Telephone: (617) 951-8000
                                  Facsimile: (617) 951-8736

                                  James B. Bear (admitted pro hac vice)
                                  Michael K. Friedland (admitted pro hac vice)
                                  Amy C. Christensen (admitted pro hac vice)
                                  KNOBBE, MARTENS, OLSON & BEAR LLP
                                  2040 Main Street, 14th Floor
                                  Irvine, CA  92614
                                  Telephone: (949) 760-0404
                                  Facsimile: (949) 760-9502

                                  Attorneys for Defendants
                                  S.A.A.T. Systems Application of Advanced
                                  Technology, Ltd.,
                                  Daiwa Products, Inc., and
                                  CVS Corporation

1927592
091505